OPINION AND ORDER ON RECONSIDERATION
MR. JUSTICE SHEEHY
delivered the Opinion of the Court.
Attorney General Mike Greely has filed a petition for rehearing following the issuance of our original opinion on May 22, 1987. The real party in interest, Montana Liability Coalition, has filed a petition for reconsideration, which we regard as a petition for rehearing. Jim Waltermire, Secretary of State, has filed a petition for clarification. Such a petition is not provided for in our rules, but we will regard it as a petition for rehearing. In any case, each petition is by the Court DENIED.
The petition of the Attorney General contends that the case of Durfee v. Harper (1899), 22 Mont. 354, 56 P. 585 was overruled by the 1972 Constitutional Convention; that publication of the “full text” of the proposed Initiative Amendment of the Constitution is not required by the State Constitution; that voiding the Initiative Amendment CI-30 is too harsh; and that the Court should fashion a relief such as requiring another election within 75 days under Sec *107 tion 13-35-107, MCA, or certifying the issue for submission to the electorate at the next general election in 1988.
The petition of the real party in interest, Montana Liability Coalition, contends that our decision overturns the Initiative Amendment on a “slight procedural irregularity”; that our decision has the incidental effect of voiding all amendments to the Constitution (by initiative or referendum) since 1977; that the proceedings in the 1972 Constitutional Convention express the intent that full text publication of initiative amendments is not required; and that substantial compliance with statutory directions for publication and proposed initiative amendments is enough.
The Secretary of State’s petition asks us to determine whether we should mandate a new election on the Initiative under Section 13-35-107, MCA; and whether our decision now requires that any future constitutional amendment, by referendum or by initiative be printed in full on the ballot, as distinguished from the voter information pamphlet.
The relators have filed a response, answering in one instrument the contention of each of the petitioners for rehearing. In their response, Relators contend that none of the petitions meet the requirements of Rule 34, M.R.App.Civ.P.; that it is inarguable that the language of the Initiative Amendment to Art. II, Section 16, 1972 Mont. Constitution, filed by the Secretary of State after the election is not the same language submitted to the electors for their vote on November 4, 1986; that this Court pointed out in its original majority opinion that no other amendment to the Constitution was affected by the decision herein; that the constitutional provision requiring printing the full text of a proposed initiative amendment in the media does not require publishing the full text of the proposed amendment on the face of the certified ballots; that the doctrine of strict compliance expressed in Durfee continues to be the law in this state; and that asking for a further election under Section 13-27-501, MCA, or certifying a ballot for the general election of 1988 is asking for an advisory opinion on issues never raised, briefed or argued.
A petition for rehearing, to be sufficient, must, under Rule 34, M.R.App.Civ.P., be presented upon the following grounds and none other: that some fact material to the decision or some question decisive of the case submitted to counsel, was overlooked by this Court, or that the decision is in conflict with an expressed statute or controlling decision to which the attention of this Court was not directed. On their faces, the petitions do not meet that criteria. The *108 majority opinion expressly sets out that it adopts the doctrines espoused in Durfee and like cases regarding constitutional amendments; that the true text of the proposed initiative amendment should be found in the Voter Information Pamphlet promulgated by the Secretary of State before the election; that publication by the Secretary of State of the full text of the proposed amendment is required under Art. XIV, Section 9 of our Constitution; and that publication of the Attorney General’s summary of the amendment (Section 13-27-312, MCA) expressed in 100 words or less did not in this instance meet the requirements for publication in the media. Yet, out of a decent respect for the concerns of the petitioners, which we take to be honestly expressed, we will discuss those few issues not glaringly found in the majority opinion itself.
Before we start, we assert one unassailable fact: Apart from the several thousand persons who may have seen the full text of the proposed amendment when they signed the initiative petitions and those few dozens of people who were intimately involved in these proceedings, the great majority of voters never saw the full text of the amendment CI-30 which the Secretary of State eventually certified had been adopted by their vote. What they did see in the Voter Information Pamphlet, their only source of information, was a text which completely reversed what the petitions for initiative amendment proposed. There is far more here than a slight “procedural irregularity” or a mere “cumbersome detail.” The text in the Voter Information Pamphlet was as different from the text certified by the Secretary of State as yes from no, white from black or good from bad.
We turn first to the contention that the 1972 Constitutional Convention “overruled” Durfee v. Harper, supra.
The statement relied on by the Coalition regarding Durfee is found in the Constitutional Convention Proceedings regarding what is now Article XIV, Section 8, Amendment by Legislative Referendum. The Convention’s Committee on Constitutional Revision had proposed two methods of amendment by the legislature, one by referendum, and one by the legislature itself. Eventually, the Convention eliminated amendment by the legislature itself. In the discussion respecting amendments by referenda, the Committee Report stated:
“. . . The first procedure ... is analogous to the method of amending the Constitution in the present Constitution’s, Article XIX, Section 9. The proposed section, however, does not go into the cumbersome procedural detail contained in the present Constitu *109 tion. This cumbersome detail has been a burden to often-popular Constitutional change. In one instance the Supreme Court of Montana voided a proposed constitutional amendment for the slight procedural irregularity of failure to follow the Constitutional directive in Article XIX, Section 9 and enter the proposed amendment in full in the journals of both houses [Durfee v. Harper, 22 Mont. 354 (1899)].”
1972 Montana Constitutional Convention, Vol. 1, at 361, 362.
The same committee report also contained the original proposal for amendment by initiative, the constitutional section with which we are concerned in this case. When speaking of the original proposal that 15% of the voters must sign such a petition for initiative amendment, the report said:
“. . . the proposed article creates a new power for the people of Montana, the right to initiate Constitutional amendments. The committee feels that this is an inherent right in a body politic whose Constitution is to be the embodiment of the will of the people. The committee’s proposal sets up the exact machinery for expressing this will through establishment of the petition requirements and the administration process. The 15 per cent petition requirement and the geographical requirement are high, but the committee feels that it is not unreasonable to demand strict standards when dealing with something as fundamental and important as Constitutional change. Although the standard is high, the committee does not feel it is so high that pressing popular and needed Constitutional reforms could not be initiated by the people. The standard, the committee feels, will operate to check erratic whimsy.”
1972 Montana Constitutional Convention, Vol. 1, at 363.
The initiative amendment proposal eventually was considered by the Convention sitting as a committee of the whole. It was in Committee of the Whole that the discussion occurred regarding whether the publication by the Secretary of State of proposed amendments by initiative should be solely in newspapers, or whether electronic media could be used. No definitive agreement was reached by the Convention on this question, but what is surprising is the report of the Committee of the Whole which was adopted by the Convention in the full committee report. Action of the Committee of the Whole on the initiative proposal was reported and adopted by the full Convention in this fashion:
“. . . that Section 11 [the initiative proposal] be amended by striking the following: ‘in such event the secretary of state shall cause the *110 amendment or amendments to be published in full in at least one newspaper in each county in which a newspaper is published, twice each month for the two months previous to the next general election for members to the legislative assembly;’ that Section 11 be adopted as amended; ...”
1972 Montana Constitutional Convention, Vol. III, at 534.
The whole article with respect to constitutional revision was then referred by the convention to the Committee on Style and Drafting. When the proposal for amendment by initiative emerged from the Committee on Style and Drafting, the provision for publication by the Secretary of State, exactly as it now appears, had been reinserted. (1972 Montana Constitutional Convention, Vol. II, at 852, Report No. 2., February 26, 1972.) Thereafter the provisions sailed through Committee of the Whole (Vol. IV, at 1194) and through final vote (Vol. VI, at 1918-1919) in the same form.
The record of the Constitutional Convention proceedings therefore supports our statement in the majority opinion that “nowhere do the constitutional framers discuss publishing less than the full amendment.” Indeed, the minority agreed, saying “that the official transcript of Montana’s 1972 Constitutional Convention does not answer the question of intent conclusively; there is no statement of the collective view of the delegates.” The foregoing recitation respecting the proceedings in the Constitutional Convention is burdensome but is made necessary by petitioner’s contentions that somehow the convention had “overruled” Durfee. The Convention proceedings simply do not support that contention.
Next we turn to the contention of the relators that the majority opinion, by requiring publication of the full text of initiative proposals to amend the Constitution, have incidentally voided all amendments to the Constitutions since 1977, including a) the drinking age of adults (1978); b) optional local government review (1978); c) confidentiality of judicial documents in the Judicial Standards Commission (1950); d) a poll of the legislators to overthrow a gubernatorial veto (1982); e) discipline of judges for breach of canons of judicial ethics (1984); f) congressional redistricting (1984); and g) elimination of the study of the Salary Commission (1986).
This contention has caught the fancy of some observers and a few editorial writers who see all around us bogey-men threatening the structure of state government.
A short answer to this contention would be that an action to void an election must be commenced within 1 year of the date of the *111 election in question (Section 13-35-107, MCA). A short answer will not suffice for what needs to be explained here.
In our majority opinion, we stated that we had examined the history of other constitutional amendments that have occurred since 1972 and that our decision in this case had no effect on such constitutional amendments.
The provisions of Section 13-27-311, MCA, which purport to permit the Secretary of State to publish a “summary of the amendment as provided by the Attorney General” in advance of the election on an initiative amendment proposal came into the statute by way of the amendment in 1979 (Ch. 571, Laws of Montana (1979)). Before that time, Section 13-27-311 required that the text of any proposed constitutional amendment, whether by initiative or by referendum, be published by the Secretary of State in at least one newspaper of general circulation in each county, twice each month for two months previous to the election. Therefore, if any constitutional amendment adopted prior to the effective date of Ch. 571, Laws of Montana (1979), had not been properly published, the defect would not arise from the majority opinion but rather from the failure of the Secretary of State to follow the law with respect to those amendments.
Since 1979, the only amendment to the Constitution proposed by means of an initiative which is affected by our decision is the one before us in this case. Another initiative proposal to amend the State Constitution also failed to muster a majority vote in 1986.
Our decision has no effect on amendments to the Constitution that may have been adopted through referendum from the legislature since 1979. As we pointed out in the majority opinion, there is no constitutional provision for publication by the Secretary of State or any other officer relating to amendments by legislative referendum. Article XIV, Section 8, 1972 Mont. Const. The majority opinion here can have no affect on such amendments. All of the amendments which the relators say are threatened by our opinion were legislatively-inspired and do not have their source in initiative. There is, therefore, no substance to the contention that we have incidentally voided other constitutional amendments.
But, the Secretary of State and the relators contend, our majority decision means not only that the full text of an initiative proposal for constitutional amendment must be published, but it also means that the full text of the initiative proposal must be stated on the face of the certified ballot given to each voter. Such a contention is an extrapolation of logic stretched to the fullest extent. Nowhere in *112 the majority Opinion is there any indication that printing the full text of an initiative proposal on the face of the ballot is required nor was such a contention raised in any pleading or brief before the Court until the petition for rehearing. The majority Opinion has confined itself to the provisions of Article XIV, Section 9, that “the secretary of state shall cause the amendment to be published as provided by law, twice each month for two months previous to the next regular statewide election.” By no means can consideration of that language be stretched to determine what should be on the face of the ballot. In point of fact, however, the majority opinion has given tacit approval to publishing the full text of the initiative proposal in the voter information pamphlet instead of the ballot, provided that the full text is there correctly stated.
Finally, we come to the contentions presented for the first time to us in the petitions for rehearing, that we should order a new election under Section 13-35-107, MCA, or as the Attorney General suggests, certify the issue for the 1988 general election ballot.
There is a grave problem as to whether Section 13-35-107, MCA, could apply to this type of case, especially. where the officials through whom the errors occurred seem reluctant to admit any fault.[1] In any event, Section 13-35-107 is discretionary and the majority can see no equity in requiring the state to incur the costs of a special statewide election within 75 days of our majority opinion. It is virtually certain that it would be impossible in that time to provide for the necessary publications in newspapers or other media and the other election requirements that would have to be followed. The suggestion defeats itself. As for certifying the issue over for the 1988 ballot, we find no statutory authority for that step and it would stretch our inherent power to an unwarranted extent. Each of those suggestions is therefore refused.
For the foregoing reasons, the petitions for rehearing, reconsideration, and clarification are each DENIED.
MR. JUSTICES HARRISON and HUNT and HON. JOSEPH B. GARY, District Judge, sitting for former JUSTICE MORRISON concur.

. On October 29, 1986, an affidavit of the Bozeman Chronicle revealed that the Secretary of State had failed to cause any publication of the proposed amendment, either of the Attorney General’s summary or the full text, in Gallatin County. That county had 28,357 voters of whom 18,582 voted. Votes for CI-30 were 9,735, against 8,046 in *116 Gallatin County. This disputable result was certified to the Secretary of State by the county election officials. In spite of his record of nonfeasance on CI-30, the Secretary of State has persisted in the media in denouncing the decision of the majority as the work of “liberals” and “political” members of the court, and has accepted no responsibility for the fiasco.